# UNITED STATES COURT OF APPEALS FOR VETERANS CLAIMS

No. 03-1204

Darryl D. Bradford, Appellant,

v.

R. James Nicholson,
Secretary of Veterans Affairs, Appellee.

On Appeal from the Board of Veterans' Appeals

(Decided     July 20, 2006     )

*Sean A. Ravin*, of Washington, D.C., was on the brief for the appellant.

*Tim S. McClain*, General Counsel; *R. Randall Campbell*, Assistant General Counsel; *Joan E. Moriarty*, Deputy Assistant General Counsel; and *Debra L. Bernal*, all of Washington, D.C., were on the brief for the appellee.

Before GREENE, *Chief Judge*, and HAGEL, and SCHOELEN, *Judges*.

HAGEL, *Judge*: Before the Court is Darryl D. Bradford's appeal from a May 9, 2003, Board of Veterans' Appeals (Board) decision in which the Board denied his claim for service connection for an acquired psychiatric disorder to include post-traumatic stress disorder. This case has been fully briefed and the Court has jurisdiction pursuant to 38 U.S.C. §§ 7252(a) and 7266(a) to review the May 2003 Board decision. Mr. Bradford argues that VA failed to comply with the specialized notice requirements of 38 C.F.R. § 3.304(f)(3) (2005), which provides that when a post-traumatic stress disorder claim is based on in-service personal assault VA must advise the claimant of alternative sources of evidence for proving the occurrence of personal assault before denying the claim. Mr. Bradford asserts that the Board erred by failing to address § 3.304(f)(3). He also argues that § 3.304(f)(3) required VA to obtain a medical opinion as to whether the assault occurred, that VA failed to fulfill its notice obligations under 38 U.S.C. § 5103(a), and that the Board failed to adjudicate his reasonably raised claims for service connection for residuals of a neck injury, headaches, and depression and anxiety secondary to the neck-injury residuals. We hold that the

Board provided an inadequate statement of reasons or bases for its decision by failing to cite or discuss the provisions of 38 C.F.R. § 3.304, and consequently, by failing to determine whether VA satisfied its obligations to notify Mr. Bradford and allow for his response in accordance with that section. We therefore remand this matter for readjudication.

## I. FACTS AND PROCEEDINGS

Mr. Bradford served honorably on active duty with the U.S. Army from February 25, 1976, to August 25, 1976. R. at 14. His separation medical examination report indicates that he had dizziness or fainting spells, recurrent back pain, and frequent trouble sleeping. In January 1999, Mr. Bradford applied for VA compensation and pension and listed "[post-traumatic stress disorder] (1976 Psychoneurotic Disorder)" as the disease or injury for which he sought compensation. Record (R.) at 108. In a February 1999 notice letter, VA asked Mr. Bradford to furnish specific details regarding his in-service stressor. On February 25, 1999, Mr. Bradford submitted a response to VA's letter and provided the names of two of his drill sergeants who were "the cause of [his] stress." R. at 260. In a May 1999 notice letter, VA informed him that the best type of evidence to submit would be statements from doctors who had treated him for post-traumatic stress disorder and that VA would assist him in obtaining medical records.

In an August 1999 decision, a VA regional office set forth the legal requirements for establishing post-traumatic stress disorder. It then stated that the medical evidence did not indicate that he had been diagnosed with post-traumatic stress disorder and that the available evidence did not indicate verification of a stressor. Mr. Bradford filed a Notice of Disagreement with that decision in September 1999. In a February 2000 Statement of the Case, VA stated that there was no medical evidence confirming a diagnosis of post-traumatic stress disorder and that the evidence was inadequate to establish that a stressful experience had occurred.

In June 2000, Mr. Bradford filed a Substantive Appeal and stated that VA had not provided him with an "adequate examination that was sufficient for rating purposes." R. at 135. In an April 19, 2001, decision, the Board remanded his claim to obtain a VA medical examination and procure clarifying evidence, in accordance with the Veterans Claims Assistance Act of 2000, Pub. L. No. 106-475, 114 Stat. 2096 (Nov. 9, 2000). The VA medical examiner was instructed to determine

whether Mr. Bradford had post-traumatic stress disorder or any other psychiatric disorder. The remand order also instructed as follows:

> The [regional office] should afford the veteran the opportunity to submit additional evidence and information in support of his claim for service connection for [post-traumatic stress disorder,] to include statements from fellow servicemembers. He should also be informed that alternative contemporaneous evidence such as letters home can be submitted to help verify his claimed in-service stressful experiences. He should be asked to provide any additional information possible regarding the stressful events claimed to have caused his [post-traumatic stress disorder].

R. at 158. Consequently, in a June 2001 notice letter, VA informed Mr. Bradford that he had the opportunity to submit any additional evidence in support of his claim, including statements from fellow service members. VA also stated that Mr. Bradford may submit other evidence such as letters home to help verify his in-service stressful experiences.

In June 2001, Mr. Bradford's mother wrote a letter to VA and stated that while in military service her son developed a problem with his neck that caused him to shake his neck and that he also developed depression at that time. In the same month, his sister also wrote a letter to VA and stated that whenever her brother talked about his experience in the U.S. Army he would become very nervous and shake his head. She further stated that her brother had informed their family that he was pushed down the stairs while in the Army and developed a pinched nerve in his neck after that incident. She commented that he still shakes his head uncontrollably as a result of the pinched nerve.

In March 2002, Mr. Bradford was hospitalized after a cerebrovascular incident and was noted to have migraine headaches and depression. In an October 2002 hearing, Mr. Bradford alleged that, while he was wearing a full body pack, his sergeant kicked him down a set of stairs. He further stated that when he came down the stairs he sustained a neck injury, that he had a "weak nerve," and that when he gets nervous his neck starts shaking and twitching. R. at 180. The hearing officer noted that Mr. Bradford had been diagnosed and treated for cervical vascular injury, migraine headaches, and depression in March 2002.

On November 27, 2002, Mr. Bradford underwent a VA medical examination administered by Dr. Anilkumar Potdar. Dr. Potdar noted the following medical history:

His chief symptoms are "pinched nerve." He reports that there is pain in his neck and side following the nerve injury. He reports that this goes back to the past 25 years following a history of falling down. He reported that he was pushed down by his superior in the Army resulting in his falling down the stairs while he was carrying a full pack and rifle. He reports significant stress from this situation and the disability has been variable.

R. at 183-84. Dr. Potdar repeated these findings when addressing subjective complaints and stated that "[Mr. Bradford] reports that there are headaches and shaking of his neck, which happen when he is under stress." R. at 184. In his examination of mental status, Dr. Potdar stated as follows: "There is no significant depression or anxiety. There is tension and a feeling of [being] stressed out. There is no disorganization or psychotic symptomatology." *Id.* Dr. Potdar also reported "depression to the mood manifested by a feeling of helplessness and hopelessness" but stated that "this is [always] accompanied by anger and tension, and a feeling of compensation for past wrongs." R. at 185. Dr. Potdar further noted the following:

Other opinion as per [Board] remand, patient is not considered to be suffering from [post-traumatic stress disorder] or psychotic disorder. There is no identified stressor except his report of being pushed down and humiliated and ill-treated by his superior sergeants during his Army service. He reports that this fall and injury caused his nerve damage. There was a significant amount of anger and resentment at the time that he has manifested periodically over the years . . . . The depression is considered to be an acquired emotional state, but it is not possible to connect this to any disorders or stressors developed during service.

*Id.*

In a February 2003 Statement of the Case, VA stated that there was no medical evidence of record of a psychotic disorder developed to a compensable degree of 10% or more within a year after service and that his diagnosis of depression in November 2002 was not related to a stressor incident that occurred during service. In the May 9, 2003, Board decision, the Board considered the issue of service connection for an acquired psychiatric disorder to include post-traumatic stress disorder. The Board concluded that there was no medical evidence establishing that "the acquired psychiatric disorders are etiologically related to service" and that service connection was not warranted. R. at 10. The Board did not discuss the provisions of 38 C.F.R. § 3.304(f)(3) or any other provisions regarding personal assault claims, and it did not address Mr. Bradford's alleged claims for a neck

4

injury, including a pinched nerve and headaches, and anxiety and depression secondary to that neck injury.

## II. ARGUMENTS ON APPEAL

Mr. Bradford raises several arguments before the Court. He asserts as follows: (1) VA failed in its duties to notify and assist because, despite its acknowledgment that his post-traumatic-stress-disorder claim was based on an alleged in-service personal assault, VA neglected to comply with 38 C.F.R. § 3.304(f)(3), which requires that when claimants allege post-traumatic stress disorder on the basis of in-service personal assault VA must advise them of alternative sources of evidence for proving the occurrence of personal assault before denying their claims; (2) the Board provided an inadequate statement of reasons or bases for its decision as a result of its failure to discuss 38 C.F.R. § 3.304(f)(3); (3) VA failed to attempt to corroborate his personal assault stressor, pursuant to § 3.304(f)(3), because it failed to submit his evidence to a medical professional for an opinion as to whether the assault occurred; (4) the Board failed to adjudicate his reasonably raised claims for service connection for residuals of a neck injury, including headaches, and depression and anxiety secondary to the neck injury residuals; and (5) VA failed to fulfill its notice obligations under 38 U.S.C. § 5103(a).

The Secretary contends that any error due to VA's failure to advise Mr. Bradford regarding the provisions of 38 C.F.R. § 3.304(f)(3) is harmless because Mr. Bradford lacked a medical diagnosis of post-traumatic stress disorder. He argues that Mr. Bradford's assertion that VA was required to provide him with a medical examination pursuant to § 3.304(f)(3) lacks merit. He asserts that the record does not support Mr. Bradford's contention that the Board should have adjudicated claims for service connection for a neck injury or depression associated with that injury. He also argues that VA fulfilled its notice obligations under 38 U.S.C. § 5103(a).

### III. ANALYSIS

#### A. Standard of Review

We review questions of law de novo without any deference to the Board's conclusions. 38 U.S.C. § 7261(a)(1); *see Smith v. Gober*, 14 Vet.App. 227, 230 (2000). When reviewing findings of fact, however, we use the "clearly erroneous" standard of review. 38 U.S.C. § 7261(a)(4)*; see*

5

*Gilbert v. Derwinski,* 1 Vet.App. 49, 52 (1990). To allow effective judicial review of Board decisions and to allow claimants to understand Board determinations, the Board must include its reasons or bases for its conclusions. *Gilbert*, 1 Vet.App. at 56-57. We have further held that the Board may commit remandable error when it fails to provide an adequate statement of reasons or bases for a decision. *Id.* at 57.

B. Specialized Procedures in Post-Traumatic-Stress-Disorder

Claims Based on Personal Assault

It is well established that a post-traumatic-stress-disorder claim may be based on in-service personal assault. *Patton v. West* 12 Vet.App. 272, 278-80 (1999); 38 C.F.R. § 3.304(f)(3); Post-Traumatic Stress Disorder Claims Based on Personal Assault, 65 Fed. Reg. 61,132 (Oct. 16, 2000). In order to receive service connection, a claimant must present credible supporting evidence that the claimed in-service stressor of personal assault occurred, as well as medical evidence diagnosing post-traumatic stress disorder and a link, established by medical evidence, between current symptoms and the in-service stressor. 38 C.F.R. § 3.304(f).

In *Patton v. West,* we recognized that because veterans face unique problems documenting their claimed stressor in personal assault cases, "VA has provided for special evidentiary-development procedures" in those cases. 12 Vet.App. at 280 (citing VA Adjudication Procedure Manual (M21-1), Part III para. 5.14c(8) and (9) (1996)). As set forth in M21-1, "[b]ecause assault is an extremely personal and sensitive issue, many incidents of personal assault are not officially reported, and victims of this type of in-service trauma may find it difficult to produce evidence to support the occurrence of the stressor." M21-1, Part III para. 5.14(c)(2) (1996), now provided under M21-1, Part III para. 5.14(d)(2) (2005). In *Patton*, we determined on the basis of M21-1 that, because of these difficulties, VA has undertaken a special obligation to assist a claimant in producing corroborating evidence of an in-service stressor. 12 Vet.App. at 284 (interpreting M21-1, Part III para. 5.14c(8) and (9) (1996)). We noted that M21-1 requires, as a part of this obligation, that VA send claimants a special notification letter expressly developed for use in personal assault claims. *Patton*, 12 Vet.App. at 272 (interpreting M21-1, Part III para. 5.14, exhibits A.3, A.4 (1996)).

6

In light of our analysis of paragraph 5.14, part III, of M21-1 in *Patton,* VA proposed an amendment to 38 C.F.R. § 3.304(f) in October 2000, to specify the types of evidence that may establish in-service personal assault and to ensure that claimants are notified of those types of evidence. 65 Fed.Reg. 61,132. In its proposal, VA reiterated that veterans face particular challenges in proving the occurrence of in-service personal assault and that many incidents are not officially reported. *Id.* To address this difficulty, VA advised that the amended regulation would provide, among other requirements, that "VA will not deny a [post-traumatic stress disorder] claim which is based on personal assault without first advising the claimant that evidence from alternative sources or evidence of behavior changes may constitute credible supporting evidence of the stressor." *Id.* VA explained that this special notification would "ensure that claimants are aware of the types of evidence which might support their claims and would give them an opportunity to obtain and submit such evidence." *Id.* VA proffered that the specialized notice would also "ensure that VA will not deny claims simply because the claimants did not realize that certain types of evidence may be relevant and therefore failed to submit such evidence to VA." *Id.*

VA adopted the proposed amendment to 38 C.F.R. § 3.304(f)(3) and it became effective on March 7, 2002, more than a year before the May 2003 Board decision that Mr. Bradford now appeals. Post-Traumatic Stress Disorder Claims Based on Personal Assault, 67 Fed. Reg. 10,330-31 (Mar. 7, 2002). That regulatory provision now states as follows:

> If a post-traumatic stress disorder claim is based on in-service personal assault, evidence from sources other than the veteran's service records may corroborate the veteran's account of the stressor incident. Examples of such evidence include, but are not limited to: records from law enforcement authorities, rape crisis centers, mental health counseling centers, hospitals, or physicians; pregnancy tests or tests for sexually transmitted diseases; and statements from family members, roommates, fellow service members, or clergy. Evidence of behavior changes following the claimed assault is one type of relevant evidence that may be found in these sources. Examples of behavior changes that may constitute credible evidence of the stressor include, but are not limited to: a request for a transfer to another military duty assignment; deterioration in work performance; substance abuse; episodes of depression, panic attacks, or anxiety without an identifiable cause; or unexplained economic or social behavior changes. *VA will not deny a post-traumatic stress disorder claim that is based on in-service personal assault without first advising the claimant that evidence from sources other than the veteran's service records or evidence of behavior changes may constitute credible supporting evidence of the*

7

*stressor and allowing him or her the opportunity to furnish this type of evidence or advise VA of potential sources of such evidence.* VA may submit any evidence that it receives to an appropriate medical or mental health professional for an opinion as to whether it indicates that a personal assault occurred.

38 C.F.R. § 3.304(f)(3) (emphasis added). With this history in mind, we proceed to consider whether, in the instant case, the Secretary and the Board complied with the provisions of 38 C.F.R. § 3.304(f)(3).

## C. Compliance with 38 C.F.R. § 3.304(f)(3)

Mr. Bradford advances that (1) VA failed to notify him in accordance with 38 C.F.R. § 3.304(f)(3) before denying his claim, (2) the Board provided an inadequate statement of reasons or bases for its decision because it failed to address the requirements of 38 C.F.R. § 3.304(f)(3), and (3) the Board erred by failing to order VA to provide the specialized notice for personal assault cases required under that regulation. The Secretary argues that any purported error that occurred because Mr. Bradford was not notified of the provisions of § 3.304(f)(3) is harmless because he lacks a diagnosis of post-traumatic stress disorder.

As we discussed above, § 3.304(f)(3) provides unequivocally that "VA will not deny a post-traumatic stress disorder claim that is based on in-service personal assault" without first providing the requisite notice. As noted above, § 3.304(f)(3) requires VA to advise personal assault claimants that credible supporting evidence of a stressor may include (1) "evidence from sources other than the veterans service records" or (2) "evidence of behavior changes." In its 2003 decision, the Board noted Mr. Bradford's assertions that he was "kicked down a flight of stairs by a drill sergeant" and that he developed psychological problems as a result of this alleged in-service stressor. R. at 7. The Board, however, failed to address whether the circumstances of the alleged personal assault required VA to provide Mr. Bradford with notice in accordance with § 3.304(f)(3) before denying his claim.

The Board must provide "a written statement of [its] findings and conclusions, and the reasons or bases for those findings and conclusions, on all material issues of fact and law presented on the record." 38 U.S.C. § 7104. The Board must also address all issues that are reasonably raised by the appellant. *EF v. Derwinski,* 1 Vet.App. 324, 326 (1991); *see also Jones v. Principi,* 3 Vet.App. 396, 399 (1992). Once Mr. Bradford had reasonably raised allegations of in-service

personal assault, the Board should have considered the applicability of § 3.304(f)(3) because it presented a material issue of law. 38 U.S.C. § 7104. By neglecting to explain its decision not to apply that regulation, the Board failed to provide "a written statement of [its] findings and conclusions, and the reasons or bases for those findings and conclusions, on [a] material [issue of law] presented on the record." *Id.*

Having found a Board error, the remaining question is whether that error was prejudicial to Mr. Bradford. *See* 38 U.S.C. § 7261(b)(2) (providing that the Court shall "take due account of the rule of prejudicial error"). Our review of the record leaves us unable to ascertain that Mr. Bradford was not prejudiced because we cannot conclude that the VA examiner's medical opinion was unaffected by the lack of corroborating evidence of a verified stressor, which may have been remedied if VA had provided the proper notice in accordance with § 3.304(f)(3).

Pursuant to the DIAGNOSTIC AND STATISTICAL MANUAL OF MENTAL DISORDERS (4th ed. 1994) [hereinafter DSM-IV] a medical diagnosis of post-traumatic stress disorder rests in part on the verification of a stressor, and also requires the presence of other criteria such as intense fear, helplessness, or horror, persistent reexperiencing of the traumatic event, persistent avoidance of stimuli associated with the trauma, and persistent symptoms of increased arousal, inability to sleep, or hypervigilance. DSM-IV, § 309.81, at 424-25.

Dr. Potdar provided the following reasoning for his determination that Mr. Bradford did not have post-traumatic stress disorder: "There is no identified stressor except his report of being pushed down and humiliated and ill-treated by his superior sergeants during his Army service." R. at 185. He then determined that "[Mr. Bradford's] depression is considered to be an acquired emotional state, but it is not possible to connect this to any disorders or stressors developed during service." *Id.* In his analysis, however, Dr. Potdar referred to only one of the criteria for post-traumatic stress disorder contained in DSM-IV, that of a verified stressor. Because Dr. Potdar did not explicitly analyze any of the other DSM-IV criteria, we determine that it is unascertainable whether he based his conclusion that Mr. Bradford did not have post-traumatic stress disorder solely on the lack of a reliable or verified stressor or due to the absence of one or more of the other DSM-IV criterion. We hold that, under the particular circumstances of this case in which the medical examiner questioned only the criterion of a stressor and did not rule out the diagnosis of post-traumatic stress disorder due to the

9

absence of any of the other DSM-IV criteria, it may be inferred that the examiner based his medical opinion on the premise that the allegation of an in-service stressor was not plausible. Because Mr. Bradford could have potentially corroborated his account of the stressor if VA had notified him regarding additional sources of evidence to prove the occurrence of the personal assault, we cannot determine that VA's alleged failure to provide him notice in accordance with § 3.304(f)(3) was nonprejudicial. We therefore conclude that the Board committed remandable error by failing to provide an adequate statement of reasons or bases to explain whether the circumstances of the alleged personal assault required VA to provide Mr. Bradford with notice in accordance with § 3.304(f)(3) before denying his claim.

### D.  Medical or Mental Health Opinions Verifying Personal Assault

Mr. Bradford asserts that the Board erred by not requiring VA to assist him by submitting his evidence, pursuant to 38 C.F.R. § 3.304(f), "to an appropriate medical or mental health professional for an opinion" as to whether the personal assault occurred. The Secretary contends that this assertion is without merit. We agree. The section provides, in pertinent part, that "VA *may* submit any evidence that it receives to an appropriate medical or mental health professional." 38 C.F.R. § 3.304(f) (emphasis added). The language of the regulation leaves the decision to obtain such a professional opinion wholly within the discretion of the Secretary. Because the regulation does not impose any obligation or duty on VA to obtain such an opinion, we conclude that neither the Board nor the Secretary erred in failing to submit the evidence to a professional for an opinion pursuant to § 3.304(f).

### E.  Duty to Notify and Claims for Residuals of a Neck Injury, Headaches, and Depression and Anxiety Secondary to Neck Injury

Mr. Bradford also presents additional arguments. He contends that VA failed to provide him with notice in compliance with 38 U.S.C. § 5103(a) and that the Board failed to correct this error. He asserts that he clearly raised claims that the pain in his neck and the head shaking were caused by a nerve injury that occurred in service when his sergeant pushed him down a flight of stairs; and that VA failed in its duties to fully develop and adjudicate these reasonably raised claims for service connection for residuals of a neck or cervical injury to include debilitating headaches and uncontrollable shaking. He also argues that VA failed to develop and adjudicate claims for

depression and anxiety secondary to the neck or cervical injury sustained in service. And he further alleges that the Board erred by failing to correct VA's errors in neglecting to develop all potential claims raised by the evidence.

We determine, however, that we need not address these issues at this time and that, on remand, Mr. Bradford is free to submit additional evidence and raise these arguments to VA, and VA must address any such evidence and arguments. *See Best v. Principi*, 15 Vet.App. 18, 20 (2001) (per curiam order); *Kutscherousky v. West*, 12 Vet. App. 369, 372 (1999) (per curiam order). If, upon remand, Mr. Bradford decides to argue that VA failed in its duty to notify, the Board should consider the Federal Circuit's recent decision in *Mayfield v. Nicholson,* 444 F.3d 1328 (Fed. Cir. 2006). In that case, the Federal Circuit held that VA's duty to notify "is not satisfied by various post-decisional communications from which a claimant might have been able to infer what evidence the VA found lacking in the claimant's presentation." *Id.* at 1333.

―――――

## IV. CONCLUSION

On consideration of the foregoing, the Board's May 9, 2003, decision is VACATED and that matter is REMANDED for readjudication consistent with this decision.