﻿Citation Nr: AXXXXXXXX
Decision Date: 08/31/20 Archive Date: 08/31/20

DOCKET NO. 190702-10727
DATE: August 31, 2020

ORDER

Service connection for an acquired psychiatric disorder to include posttraumatic stress disorder (PTSD), depression, anxiety reactions, and panic attacks, is denied.

FINDINGS OF FACT

1. The preponderance of the competent evidence demonstrates that there is no credible supporting evidence of an in-service stressor.

2. The preponderance of the competent evidence demonstrates that the Veteran’s acquired psychiatric disorder, to include PTSD, depression, anxiety reactions, and panic attacks, was not incurred during military service.

CONCLUSIONS OF LAW

1. The criteria for entitlement to service connection for an acquired psychiatric disorder to include PTSD, depression, anxiety reactions, and panic attacks have not been met. 38 U.S.C. §§ 1110, 1131, 5107; 38 C.F.R. §§ 3.102, 3.303.

REASONS AND BASES FOR FINDINGS AND CONCLUSION

The Veteran served on active duty in the United States Marine Corps from April 1971 to July 1971.

The rating decision on appeal was issued in April 2019 and constitutes an initial decision; therefore, the modernized review system, also known as the Appeals Modernization Act (AMA), applies.

In the VA Form 10182, Decision Review Request: Board Appeal (Notice of Disagreement) (NOD), the Veteran elected the Direct Review option; therefore, the Board may only consider the evidence of record at the time of the agency of original jurisdiction (AOJ) decision on appeal. 38 C.F.R. § 20.301.

In July 2005, the Board denied the Veteran’s claim of entitlement to service connection for PTSD. In November 2015, the Board denied reopening of the claim of entitlement to service connection for PTSD and denied service connection for an acquired psychiatric disorder other than PTSD; the Board’s decision became final. In April 2019, the RO readjudicated the Veteran’s service connection claim for PTSD and acquired psychiatric disorder other than PTSD, reopening both claims, and then denying them on the merits. The Board will not disturb the RO’s reopening of the claims as it is a favorable finding and will only address the claim on the merits herein.

Furthermore, as the Veteran alleges that his psychiatric disorders are due to military sexual trauma (MST), the Board has merged the claims into one and recharacterized it as service connection for an acquired psychiatric disorder to include PTSD, depression, anxiety reactions, and panic attacks due to military sexual trauma.

Evidence was added to the claims file during a period of time when new evidence was not allowed. Therefore, the Board may not consider this evidence. 38 C.F.R. § 20.300. The Veteran may file a Supplemental Claim and submit or identify this evidence. 38 C.F.R. § 3.2501. If the evidence is new and relevant, VA will issue another decision on the claim, considering the new evidence in addition to the evidence previously considered. Id. Specific instructions for filing a Supplemental Claim are included with this decision.

1. Entitlement to service connection for an acquired psychiatric disorder to include PTSD, depression, anxiety reactions, and panic attacks due to military sexual trauma

The Veteran claims that his psychiatric disorders are the result of his military service. His current claim was received by VA in December 2018.

Service connection may be granted for disability resulting from disease or injury incurred in or aggravated by active service. 38 U.S.C. § 1110; 38 C.F.R. § 3.303. Service connection for PTSD requires medical evidence diagnosing the condition in accordance with 38 C.F.R. § 4.125(a); a link, established by medical evidence, between current symptoms and an in-service stressor; and credible supporting evidence that the in-service stressor occurred. 38 C.F.R. § 3.304(f).

If a PTSD claim is based on in-service personal assault, evidence from sources other than the Veteran’s service records may corroborate the Veteran’s account of the stressor incident. 38 C.F.R. § 3.304(f)(5); see also Patton v. West, 12 Vet. App. 272, 277 (1999). Examples of such evidence include but are not limited to records from law enforcement authorities, rape crisis centers, mental health counseling centers, hospitals, or physicians; pregnancy tests or tests for sexually transmitted diseases; and statements from family members, roommates, fellow service members, or clergy.

Evidence of behavior changes following the claimed assault is one type of relevant evidence that may be found in these sources. Examples of behavior changes that may constitute credible evidence of the stressor include, but are not limited to a request for a transfer to another military duty assignment; deterioration in work performance; substance abuse; episodes of depression, panic attacks, or anxiety without an identifiable cause; or unexplained economic or social behavior changes. 38 C.F.R. § 3.304(f)(5). For personal assault PTSD claims, an after-the-fact medical opinion can serve as the credible supporting evidence of the stressor. 38 C.F.R. § 3.304(f)(5); Menegassi v. Shinseki, 638 F.3d 1379, 1382-83 (Fed. Cir. 2011); Bradford v. Nicholson, 20 Vet. App. 200, 207 (2006); Patton v. West, 12 Vet. App. 272, 280 (1999).

Lay statements may serve to support a claim for service connection by supporting the occurrence of lay-observable events or the presence of disability or symptoms of disability subject to lay observation. 38 U.S.C. § 1153(a); 38 C.F.R. § 3.303(a); Davidson v. Shinseki, 581 F. 3d 1313 (Fed. Cir. 2009); Jandreau v. Nicholson, 492 F.3d 1372 (Fed. Cir. 2007). Although lay persons are competent to provide opinions on some medical issues, some medical issues fall outside of the realm of common knowledge of a lay person. Kahana v. Shinseki, 24 Vet. App. 428 (2011).

When there is an approximate balance of positive and negative evidence regarding any issue material to the determination of a matter, the benefit of the doubt will be granted to the claimant. 38 U.S.C. § 5107; 38 C.F.R. § 3.102; Gilbert v. Derwinski, 1 Vet. App. 49, 53 (1990). To deny a claim on the merits, the preponderance of the evidence must be against the claim. Alemany v. Brown, 9 Vet. App. 518, 519 (1996).

As to a current disability, VA and private clinical records document diagnoses and treatment for PTSD, depression, and anxiety. The Board also observes that the April 2019 rating decision included a favorable finding of a current disability, and that the Board is bound by this finding. See 38 C.F.R. § 20.801. Thus, for purposes of service connection, the first element has been met.

To grant service connection for PTSD, there must be a verified in-service stressor. The Veteran reports that he was raped during basic training in the Marine Corps because he could not keep up due to his asthma and the recruits took it out on him.

The Board finds the Veteran’s report of being assaulted has not been verified.

A review of the service treatment records (STRs) provide no indication or reports of treatment or complaints of the Veteran being assaulted during active duty. Clinical examination of all systems was found to be normal at the time of a November 1970 service examination. The Veteran completed a report of medical history at that time wherein he denied having or ever having had depression or excessive worry.

The personnel records indicate the Veteran exhibited poor academic performance as a result of a poor educational background and extreme difficulty comprehending and retaining verbal and written instructions. He was administratively discharged from service approximately three months following his entrance into service as he was found to be unsuitable due to inaptitude (inability to learn).

Reviewing the personnel records leading up to his discharge, a May 1971 medical evaluation form indicates the Veteran’s performance when compared with other recruits was fair. It was noted the Veteran was timid or shy. The document was annotated to indicate that the Veteran was okay when working with the platoon but seemed timid on his own.

Later again in May 1971, a clinician indicated that the Veteran was cooperative in group efforts. It was written that the Veteran was the quiet type but he got along well with the privates, worked well with them, and had little problem adjusting.

A clinician completed the form for a third time in May 1971. The Veteran’s performance in recruit training was poor when compared to other recruits. It was noted that he was co-operative with group efforts and his conduct with other recruits was good. Military authority and discipline did not particularly upset him.

In June 1971, it was again indicated that performance in recruit training was poor when compared to other recruits. It was reported that the Veteran mixed well, and an annotation was made that the Veteran got along well with other privates but was very slow. It was found that the Veteran had no mental or physical disability which would warrant his discharge by reason of physical disability.

A service separation examination was conducted in June 1971. No pertinent abnormalities were noted.

Subsequent to service, private clinical records reveal that in August 1996 the Veteran was diagnosed with cocaine and alcohol dependence and depressive disorder secondary to cocaine and alcohol dependence. Another record dated in August 1996 indicates that the Veteran reported two prior hospitalizations, both times for drug abuse. The Veteran denied any other psychiatric history or treatment. The Veteran was questioned as to an abuse history in August 1996 and denied physical and/or sexual abuse.

A September 1999 private clinical record includes the annotation that the Veteran denied a history of sexual abuse.

In February 2001, the Veteran wrote that he has had problems ever since military service. He reported he was an honor student prior to service but his life was hell after he got out.

In October 2001, the Veteran reported that during basic training, he could not do things like the rest of the guys, and was, therefore, gang raped. He also reported that in 1983 or 1984 he was working delivering truckloads of supplies to an institution which housed mentally challenged children and he accidentally ran over a child. He indicated that the incident was ruled an accident, but that he had always felt bad about this. He reiterated these events in July 2002 and added that he had been haunted by both. The diagnosis was PTSD and major depression.

A Veteran Center information form dated July 2002 reveals that “Vietnam era non theater” and “sexual trauma” was checked.

A letter from the Veteran’s counselor at The Veteran Center in Austin, Texas, dated December 2002, shows that the Veteran was diagnosed with PTSD, recurrent major depressive disorder, and cocaine abuse, in full remission. The counselor indicated that the Veteran had reported being gang raped by peers in his platoon as punishment for being unable to keep up with the demands of basic training due to a history of asthma. The counselor also pointed out the Veteran’s academic shortcomings and intellectual difficulties demonstrated during his period of active service. The counselor opined that his academic difficulties, as well as his asthma, made him a target for others in his platoon who did not understand why he could not perform well and saw him as an impediment to the platoon’s functioning. He added that he believed the Veteran’s account of his gang rape and that his symptoms were consistent with those of PTSD. He concluded that the Veteran was indeed gang raped while in basic training and that this event led directly to the development of PTSD, depression, and cocaine abuse (now in full remission).

A May 2003 letter from the Veteran’s counselor at the Vet Center in Austin, Texas shows that the Veteran was diagnosed with chronic, severe, PTSD; recurrent major depressive disorder; and cocaine abuse, in full remission. The counselor opined that he believed the Veteran was indeed gang-raped by his basic training peers. The counselor wrote that the symptoms of PTSD, to include flashbacks and nightmares, were specifically about being raped and were so vivid that he had body sensations of being raped. The counselor concluded that it was more likely than not that the Veteran developed PTSD secondary to his rape while in service.

In May 2004, the Veteran testified at a personal hearing over which a hearing officer of the RO presided. He reported that he could not do the physical training and he was beaten up and raped by the other recruits. He stated that he told his drill instructor about the rape during service; nothing was done but the attacks stopped. After the incident he was looking for a way out because he was scared and fearful for his life. He indicated that he had been beaten several times and then raped. He reported he was first diagnosed with PTSD in July 2002.

VA clinical records from July 2002 to July 2004 show that the Veteran received intermittent treatment for symptoms associated with major depressive disorder and PTSD. Subsequent VA clinical records through 2019 show continuous treatment for PTSD.

In a March 2009 stressor statement, the Veteran indicated that he was beaten and raped because he could not perform physical training exercises. He indicated that he was assaulted on three separate occasions.

Upon review of the foregoing evidence of record, the Board notes that the Veteran has been diagnosed as having PTSD. However, the claim must still be denied in the absence of another essential criterion for establishing service connection for PTSD—credible evidence that the claimed in-service stressor actually occurred.

The Veteran does not claim that his stressor is related to his having engaged in combat with the enemy and he has not received combat citations, badges, or other decorations indicative of combat engagement. Thus, there are not “recognized military citations or other supportive evidence” that the Veteran actually engaged in combat. West v. Brown, 7 Vet. App. 70, 76 (1994). The Board finds, therefore, that the Veteran is not a veteran of combat.

Accordingly, under 38 C.F.R. § 3.304(f), the occurrence of claimed stressors not related to combat must be supported by credible evidence. Although there is evidence from the Veteran as to the in-service stressor, the Board finds it lacking in consistency and credibility. Taken in total, for the reasons discussed below, the evidence is not credible.

The Board recognizes that the Veteran was discharged from service shortly after his entrance due to inaptitude. While the evidence of his inaptitude, as well as substance abuse after service and the opinion from the counselor at the Vet Center that the Veteran was raped, might otherwise lend credibility to his report of in-service sexual assault, this is of insufficient weight to overcome the inconsistency and lack of credibility of his statements taken in the context that he himself has provided.

The contemporaneous STRs do not support the Veteran’s allegations of in-service sexual assault. For example, he testified that he reported the incident to his drill instructor during service, but there is no documentation of any such report associated with the service medical or personnel records. The Veteran also stated that he was raped by peers as punishment for being unable to keep up with the demands of basic training due to asthma; however, there is no evidence of records showing that the Veteran was treated for asthma during service. He complained of asthma in May 1971; however, his lungs were clear and there was no documented history of asthma. See July 2014 STRs. In April 1971, he was treated for rhinitis, at which time he stated that during the day he seemed to have no problem at all. The Veteran also testified that he was beaten during service; however, he was examined several times during his three-month long service and there were no complaints or findings of any injuries. STRs also showed that the Veteran actually got along well with others and had little problems adjusting. Of particular significance, during post-service private psychiatric treatment in September 1999 the Veteran himself denied a history of sexual abuse.

In October 2002, the RO specifically asked him for information and/or evidence corroborating his claimed stressor, but he did not respond. Nor did he provide any specific details at his hearing at the RO. The court has held that the duty to assist “is not always a one-way street” and that, “[i]f a veteran wishes help, he cannot passively wait for it in those circumstances where he may or should have information that is essential in obtaining the putative evidence.” Wood v. Derwinski, 1 Vet. App. 190 (1991), at 193.

As noted above, the Veteran has been diagnosed as having PTSD. However, the Veteran provided a history to these examiners of having experienced a stressful event in service, the details of which, as noted above, were not confirmed. The Board is not obligated to grant service connection for PTSD solely because the record contains a diagnosis of PTSD. See Wilson v. Derwinski, 2 Vet. App. 614, 618 (1992). The diagnoses of PTSD in this case were predicated on the Veteran’s history of a stressor which has not been verified or corroborated, either by service records or other supportive evidence, such as credible lay statements from other witnesses. The Board is not required to accept a veteran’s uncorroborated account of his military experiences or the opinions of psychiatrists and psychologists that are based on such an uncorroborated history provided by the Veteran. See Wood v. Derwinski, 1 Vet. App. 190, 192 (1991).

Accordingly, the criteria for service connection for PTSD are not met, and the claim for service connection must be denied. In reaching this conclusion, the Board has considered the applicability of the benefit-of-the-doubt doctrine. However, as the Veteran’s claim simply is not supported by credible evidence, that doctrine is not applicable in the instant appeal. See 38 U.S.C. § 5107(b); 3.102; Gilbert, 1 Vet. App. At 53-56.

As to service connection for the Veteran’s psychiatric disorder other than PTSD, service connection is not warranted for the same reasons set forth above. Notably, as indicated above, the Veteran’s incurrence of his military sexual trauma has not been confirmed. The Board is not required to accept a veteran’s uncorroborated account of his military experiences or the opinions of psychiatrists and psychologists that are based on such an uncorroborated history provided by the Veteran. See Wood v. Derwinski, 1 Vet. App. 190, 192 (1991).

While the Board is sympathetic to the Veteran’s contentions, in the final analysis, the Board finds that the preponderance of the evidence is against his claim of entitlement to service connection for an acquired psychiatric disorder to include PTSD, depression, anxiety reaction, and panic attacks. 38 U.S.C. § 5107(b); Gilbert v. Derwinski, 1 Vet. App. 49 (1990). As such, the provisions of 38 U.S.C. § 5107(b) regarding reasonable doubt are not applicable.

 

 

T. SHERRARD

Acting Veterans Law Judge

Board of Veterans’ Appeals

Attorney for the Board C. Garcia

The Board’s decision in this case is binding only with respect to the instant matter decided. This decision is not precedential and does not establish VA policies or interpretations of general applicability. 38 C.F.R. § 20.1303.